FRANCIS L. DARNALL AND WIFE *vs.* PHILIP HILL AND OTHERS.—*December*, 1842.

R died in 1816, leaving a widow and minor children. In the following year the widow married D, who, with his wife and her children went into possession of the estate of R. In 1820, D was appointed guardian of the children; he remained in possession, cultivating and using the lands and negroes, &c., until 1832, receiving and selling the crops, and using their proceeds, when he delivered up the estate to the children, declaring he should not claim any thing for his wife's thirds of her first husband's estate. Upon a bill filed in 1833, by D and wife, against the heirs of R, claiming her third of the rents and profits of the estate, her right to dower being admitted, it appeared that D had delivered the crop of *1831, to W*, one of the children. HELD, that if D had any claim for a proportion of the crops of 1831, it was against W, at law, and that he could not recover against the other defendants, prior to filing his bill in 1833, and that, under the circumstances the complainants were not entitled to interest on their portion of the rents and profits, when ascertained.

It is against equity to permit a party to take advantage of a course of conduct, pursued by another in consequence of the declared intentions of the claimant, made with full knowledge of his rights.

Where a widow's right to dower is admitted, she is, before its assignment, entitled to an account of the rents and profits of the land, and one-third of the nett amount thereof, as her proportion.

In a bill for a widow's proportion of rents and profits in lieu of dower, her right being admitted, no allegation of a demand for an assignment of dower is necessary. The heir in possession is answerable for damages from the death of the husband, even without demand, unless he plead *tout temp prist;* and even then, he is liable from the date of the subpœna against him.

Upon a bill by husband and wife, claiming a portion of rents and profits, as damages for the detention of her dower or in lieu of dower, the defendants, the heirs of the first husband, cannot set-off a demand which they may have against the second husband, for the use and occupation of the land during their minority. The two claims are not due in the same right; and that for damages would survive to the wife.

Where the proof shews that the defendants were in possession of land, as heirs at law, the legal presumption would be, that such possession continued until the contrary was shown.

According to the practice of the court, an account charging rents and profits may be brought down to the date of the decree in this court, or the Court of Chancery, or to the time of the delivery of possession of the dower asssigned to a widow.

On the 2nd October, 1833, the complainants filed a bill claiming an account of rents and profits, and a proportion thereof as due one of them for dower in her deceased husband's estate. On the 3rd of the same month, the same

complainants filed another bill against the same defendants, claiming an assignment of dower, and an account and proportion of rents and profits up to her assignment. Upon the latter bill a commission to assign dower was issued, executed, returned, and finally ratified in 1838; but the decree took no order, and passed no judgment upon the subject of anterior rents and profits. HELD, that the proceedings and decree under the second bill was no bar to a recovery under the first.

Under the act of 1832, chap. 302, sec. 6, this court will notice judicial proceedings embodied in the record, not excepted to, neither pleaded in bar, nor offered in evidence, but which may materially affect the state of the accounts between the parties, so far as to remand the cause with instructions for further proceedings.

Where two bills are depending in the same court, between the same parties, upon the same subjects matter, at the same time, and various steps are taken by consent in both, the court under circumstances will infer, that it was the intention of parties to litigate one portion of their claim under one bill, and another part under the other. and not treat a decree, under the bill which covered the whole ground, as a technical bar to the other.

APPEAL from the Court of Chancery.

The proceedings in this case were first commenced in *Prince George's* county court, and subsequently removed to the Court of Chancery.

On the 2nd October, 1833, the appellants filed their bill, alleging, that *Richard Hill* died some time in the spring of 1816, intestate, leaving the following children his heirs and representatives, to wit, *Philip Hill*, aged 13 years; *Mary Ann*, aged 11 years; *William*, aged 9 years; and *Elizabeth*, aged 6 years: that letters of administration upon his estate were granted to *Margery Darnall*, wife of *Francis L. Darnall*, and a certain *Joseph H. Wilson*, who returned an inventory of said estate, but no account of their administration; that the complainants intermarried in the year 1817; that the personal estate of the said *Richard* has been finally settled, and his several representatives respectively paid their portions of his estate; that complainant *F. L. D.*, in the year 1820, was appointed guardian to all the said children, and took possession of their property, upon the express condition assented to by the orphans court, from which he derived his appointment; that he should, out of the interest and profits of their estate, real and personal, maintain, clothe and educate the said wards or

minor children, and that upon so doing he should not be charged with said interest, rents and profits, during the continuance of his said guardianship, which undertaking he has faithfully performed; that the profits of their proportion of their father's estate, was not more than sufficient to enable him to execute the trust undertaken by *F. L. D.* with the orphans court; that his guardianship has some time since expired, and he has fully paid off his said wards; that *Philip Hill* relinquished all his right to any part of his father's estate, in consequence of a devise made to him by his aunt *Ann Magruder*, as per exhibit A; that the said *Richard* died seized and possessed of a tract of land called *Baltimore*, containing 443 acres, to her dower in one-third of which your oratrix was and is entitled, together with the rents and profits therefrom arising; that after the marriage of complainants the said *F. L. D.* resided upon the said tract, and cultivated the same until March 1832, when he left the same; that at the time he removed from the said tract, there was on the same a large and valuable crop of wheat and tobacco, to one-third of which complainants were entitled, in virtue of the right of dower of the said *Margery*, which said crop has been since sold by *William Hill* for a large sum, the whole of which has been appropriated by him to the use of himself, *Mary Ann* and *Elizabeth Hill*; that the said *M. A., E.* and *W. H.*, do now reside, and have resided upon the said tract of land, ever since your orator removed from the same, and have made large crops upon the same, and disposed thereof; to one-third of which the complainants allege they are entitled, in right of the said *M. D.* The bill then alleged, that the defendants were indebted to *F. L. D.* for sundry specified advances and payments made by him to and for their account, and that all the children were of full age except *Elizabeth*, now about 18 years of age. Prayer for subpœna, and an account of the rents and profits of the land, and payment of the advances made, and for general relief, &c.

The will of *Ann Magruder*, dated 14th June, 1824, and admitted to probat 21st Dec. 1824, devised a tract of land to

*Philip Hill*, in consideration that he would relinquish all his interest in his father's estate to his brother and sisters.

The account filed with the bill stated the claims of *F. L. D.* against the heirs of *Richard Hill*, and was brought down to 20th May, 1833.

This record also contains another bill filed by *F. L. D.* and wife, on the 3rd October 1833, for an assignment of dower by commissioners, to *Mrs. Darnall*, as widow of *Richard Hill*, and an account for rents and profits, against the same defendants, as the first bill.

The answers of *Mary Ann*, *William* and *Elizabeth Hill*, to the bill for dower, admitted the death of their father, his seizen in fee, his marriage with their mother and her subsequent marriage with *F. L. D.;* that after the intermarriage of complainants, which took place in the year 1817, the complainants took possession of the real and personal estate of *R. H.*, and worked the land with the negroes left by *R. H.* up to the year 1832, making upon the same large crops, which were sold by *F. L. D.*, who after the mere pittance applied by him to the support, &c., of your respondents, applied the residue of the proceeds to his own immediate purposes; that *F. L.* removed from the farm left by *R. H.* in the year 1832, and stated to these defendants at the time, that he did not intend to claim the dower of his wife in the said land; that he never mentioned any thing about the dower aforesaid until some time in the summer of 1833, at which time he claimed one-third of the crop which had been made since he left the land; that he was then informed by one of these defendants, *W. H.*, that he *F. L. D.* had taken away all his wife's proportion of the personal estate, and that the defendants would not agree to give him any part of the crops, but that they were willing the dower might be laid off whenever he might think proper to apply for it, and are now willing that *M. D's.* dower may be assigned her, as the court shall direct, but are not willing to pay the complainants any part of the proceeds of the land.

The answer of *Philip Hill* to the bill for dower, disclaimed all interest in his father's land, and alleges that he had fre-

quently heard *F. L. D.* say, that he never intended to claim his wife's dower in the land in the proceedings mentioned, and he also stated, that when he left the estate the children should not owe one cent to any one.

The answers of *P. H.*, *John B. Magruder* and *Mary Ann* his wife, *William* and *Elizabeth Hill*, to the bill of 2nd October, 1833, admitted that their father *R. H.* died intestate, in 1816, leaving the complainant *Margery*, his widow, and the above defendants his children, heirs at law; that *M.* and *J. H. W.* became his administrators; that in 1817 *F. L. D.* intermarried with the widow, and was appointed their guardian in 1820; that he immediately after his marriage took possession of the valuable real estate left by their father *R. H.*, and with the negroes, stock, &c., left by him, worked the same, and received and applied the proceeds thereof from the time of his marriage until his appointment as guardian, to wit, for the years 1817 to 1820 inclusive, to his own use, except so far as finding and clothing the defendants, who lived with him on the estate of their father; that they are ignorant of the conditions on which *F. L. D.* became their guardian, and deny those alleged by him, or that he faithfully performed his duty as guardian. The answer then imputed various delinquencies to said *F. L. D.* as guardian, and alleged, that from his appointment in 1820, up to 1832, some years after the expiration of his guardianship, he remained upon the estate of the defendants, and for the whole of said time, except the crop made in 1831, received the proceeds of said estate, and during the whole of said time applied the balance, after paying the expenses of the family, to his own individual use; that he is largely indebted to them; that in 1828, ignorant of his liability, they gave him receipts, but two of defendants were then minors. The answer then admitted that *R. H.* died seized of the real estate in the bill mentioned, *to dower in which, they also admit the complainant Margery* to be entitled, but deny the right of complainants to rents and profits of said estate, as claimed by them; that the complainants have filed a separate bill in this court for their dower in said estate, and their proportion of

rents and profits, in virtue of said right of dower, which bill has been fully answered. The answer further stated, that the crops alleged by the complainants to have been left by them on said estate, when they removed therefrom, were sold by the defendant *William Hill*, but that the proceeds were not applied to his own use, but were applied to the payment of the debts which had been contracted by the said *F. L. D.* and the defendant *W. H.*, for the use of the estate, by the advice and direction of *F. L. D.;* that complainants never made a demand on defendants to have the dower now claimed, laid off, but on the contrary, *F. L. D.* always stated to the defendants, that he should not claim his wife's dower in said land, until some time in the year 1833, when he for the first time stated that he intended to claim it. The residue of the answer related to the personal estate of *R. H.*, and proceeds of the crops, their receipt and application.

On the 6th May, 1836, and on the petition of complainants, a commission was ordered and issued to lay off the dower of *Margery Darnall.*

On the 1st December, 1836, the commission to lay off dower was remanded, as erroneous, by the county court, to the commissioners. This was executed on the 12th April, 1837, and returned to the county court, with a plat.

Commissions to take testimony were also issued, executed and returned.

On the 6th February, 1838, the county court (C. DORSEY A. J.) on the bill of 3rd October, 1833, being satisfied that the complainant *Margery*, as the widow of *Richard Hill*, deceased, is entitled to a right of dower in his real estate, by the consent of parties, decreed, that the return made to this court by the commissioners since the commission was remanded, who were heretofore appointed by this court to assign and lay off said dower, be and the same is hereby ratified, &c.

On the 11th July, 1839, by consent the cause was referred to the auditor to report accounts, the equities of the parties being reserved until the hearing of said accounts on such exceptions as may be taken to them respectively. The auditor

stated and reported two accounts, A and B, which are suffi-ciently set forth in the opinion of the appellate court.

On the 16th January, 1840, the causes were removed from *Prince George's* court, upon the suggestion of the defendants, to the Court of Chancery, where after exceptions by both parties to the proof, and by the defendant to the sufficiency of the bill, as not containing any allegation of a demand and refusal of dower, nor the annual value of the rents and profits, and that the bill made no case. The Chancellor (BLAND) decreed that the bill filed on the 2nd October, 1833, be dismissed with costs, being of opinion that there was no just foundation in fact for the claim of the plaintiffs for rents and profits of so much of the real estate in the proceedings mentioned in which she was entitled to dower, and that the said claim for rents and profits, having been fully put in issue under the bill of com-plaint, filed by them on the 3rd October, 1833, has been finally adjudicated upon and barred by the decree passed in that cause on the 6th February, 1838.

From which decree the complainants appealed.

The cause was argued before STEPHEN, ARCHER, DORSEY and CHAMBERS, J.

By ALEXANDER and J. JOHNSON for the appellants, and
By C. C. MAGRUDER and T. G. PRATT, for the appellees.

ARCHER, J., delivered the opinion of this court.

The complainants, on the 2nd of October, 1833, filed their bill in *Prince George's* county court, alleging, among other things, that *Richard Hill*, of *Prince George's* county, died seized of certain lands in the said county, leaving one of the complainants his widow, who afterwards intermarried with the other com-plainant, and that she was entitled to dower in the said lands, and that the complainant *Francis L. Darnall*, who intermarried with *Mrs. Hill* in the year 1817, was in the year 1820 ap-pointed guardian of the children of *Richard Hill*, and received the rents and profits of the said lands as such guardian until the year 1832, and expended said rents and profits in the

education and maintenance of the children of *Richard Hill,* except the crops of 1831, which the complainant *Darnall* passed over to *William Hill,* one of the children of *Richard Hill,* and that since the year 1832, the children of *Richard Hill,* except *Philip Hill,* who relinquished his interest in his father's estate to the other representatives of *Richard Hill,* have been in possession, and have made large crops of " wheat, corn and tobacco, to one-third of which they allege they are entitled, in virtue of the right of dower of *Mrs. Hill.*" And they pray an account of their proportions of the crops and monies by them received, and for other and further relief, as to the court shall seem meet.

The answer to this bill is filed 9th April, 1834, and by this answer the right of dower is admitted, but the claim to the rents and profits is denied.

It appears from the evidence in the cause, that the complainants occupied the land from the day of their intermarriage in the year eighteen hundred and seventeen, until the year 1832, when the lands were given up to the devisees of *Richard Hill.* It is further proved, that the complainant, *Francis L. Darnall,* declared, just before and a short time after he delivered possession to the devisees, that he should not claim any thing for his wife's thirds of her husband's estate, and there is no evidence in the cause that he interposed any claim until the filing of this bill.

Accounts have been stated by the auditor. The one account A, stating the complainant's claim from the death of *Richard Hill* to the time when it is alleged dower was assigned to *Mrs. Darnall.* The other account B, states the claim from 6th May, 1832, to 6th May, 1838, and besides, allows the complainants one-third of the crop raised on the lands in 1831. In both these accounts interest is allowed.

The complainants having been in possession of the whole lands until 1832, do not seek, in this court, to recover the rents and profits according to account A, but insist that account B is stated upon proper principles, and they claim its allowance at the hands of this court.

The allowance in account B, for one-third of the crop of 1831, could not be allowed in this case.    The crop of that year, or its proceeds, were, by *Francis Darnall,* one of the complainants, placed in the hands of *William Hill,* one of the defendants, from whom, if he be entitled to recover it, he must seek redress in a different form of proceeding, and before another forum.    The defendants were not in possession of the lands during the year 1831, but the complainants were in possession, and could have no pretence for charging damages against the defendants for that year, nor do we think the complainants could recover mesne profits at any time before the filing of the bill of the 2nd October, 1833, because, according to the proof, the complainant, *Francis L. Darnall,* frequently declared that he did not intend to claim any thing for his wife's thirds of her first husband's estate, and no contrary intention is manifested until the filing of the bill in this cause.    But for this declaration, it is probable, that the defendants would have assigned dower to their mother, and we think, therefore, that it would be inequitable to permit the complainant to take advantage of a course of conduct pursued by the defendants, in all probability, in consequence of the declared intentions of the complainant.

The bill is inartificially drawn, but the widow's right to dower is distinctly stated; the possession of the defendants is also averred, and that large crops were made on the lands, and although strictly, the widow would not be entitled to one-third of the gross amount of the crops, she would have a right to one-third of the net amount thereof, and she would be entitled to an account of the crops, so that the net annual value might be ascertained, and under the prayers in the complainant's bill, so far as the frame of the bill is concerned, would be entitled to a decree for one-third of such balance as her proportion of the rents and profits.

No allegation of a demand for an assignment of dower was necessary to have been made in the bill.    The heir in possession is answerable for damages from the death of the husband, even without demand, unless the heir plead *tout temp prist;*

and in *Park on Dower*, 303, it is asserted, that even when the heir plead *tout temp prist* with success, the demandant shall recover damages from the test of the original to the execution of the writ of enquiry, so that if we were to consider that the answer in this case was equivalent to a valid plea at law of *tout temp prist*, and that it was put in, in time to be available, still damages might be decreed from the date of the subpœna.

We think the circumstances of this case would preclude the allowance of interest to the complainants, if the cause were in a condition to enable us to decree rents and profits.

It is unnecessary to determine whether the answer was filed in time, admitting a right of dower, and declaring a readiness at all times to assign dower, if it had been demanded, so as to enable us to determine whether damages could be claimed from the death of the husband, or for any period anterior to the filing of the bill, because we have seen that complainants, from other considerations, are not entitled to damages anterior to the filing of the bill.

Whether a claim exists on the part of the heirs against the complainant, *Darnall*, for the use and occupation of the land from the date of his marriage in 1817, he having occupied the same from that period until 1832, and what, if any, may be the amount of such claim we have not deemed it necessary to examine, because we are satisfied that such a claim could not be set off against the demand of the husband and wife for the wife's proportion of the rents and profits of the land. The two claims are not due in the same right, and the claim, if recovered in this case, surviving to the wife.

It is said, that as there is no proof of possession in the defendants, after the year 1834, that no decree for rents and profits, accruing after that period, could be passed against the defendants. But if there existed this defect of evidence, we apprehend, as the proofs show the defendants to be in possession, the legal presumption would be, that such possession continued until the contrary is shewn, and according to the practice of the court, the account charging the rents and profits might be brought down to the date of the decree in this

court, or the Court of Chancery, or the delivery of possession of the dower assigned to the widow.

But the case, as we view it, is not in a condition to enable us to do substantial justice to the parties. There is no legal evidence before us, that dower has ever been assigned under the bill of the 3rd of October, or that possession has ever been delivered to the widow. The bill in the case before us is sufficient in its terms to justify both a decree for dower and rents and profits. It will of course be perceived in the present state of the evidence, we should be at a loss to prescribe the terms of any decree which would meet the justice of the case.

The decree on the bill of the 3rd of October is neither pleaded in bar, nor are the proceedings under that bill made evidence in the case, so that we could found any decree upon them, or take any other judicial notice of them, than to furnish grounds to enable us, under the act of Assembly of 1832, chapter 302, to remand the case for further proceedings in Chancery.

As this case must be remanded to the Chancellor for the introduction of such evidence as may furnish a proper foundation for a decree, and as the bill of the 3rd of October, and the proceedings under it, may be relied upon as a bar to the recovery of rents and profits, we deem it proper to say, as the question has been fully argued, that we do not consider such proceedings a bar to the complainant's recovery.

It is apparent to us, that the question as to the rights to rents and profits was never adjudged by the court under the bill of the 3rd of October. The right to dower had been assented to in the answer, and the complainants had petitioned the court to appoint a commissioner to lay off the dower, grounded on the assent contained in the answer. After the commissioners had made their return, the case is set down for hearing, and a decree, with the *consent* of the parties, passes for the widow's dower. Nothing is said on the subject of the rents and profits, although two commissions had issued, and the testimony of numerous witnesses had been taken, having reference to that question. After this decree had thus

been taken *by consent*, the parties under the bill of the 2nd of October, *by consent*, obtained the decree of the court for an account, *and such equities are only reserved, as may be the subject of exceptions to the account when stated.* From such proceedings of the parties we deduce the conclusion, that by mutual agreement a decree was to pass for dower in the one case, and that the question of the right to the rents and profits should be litigated in the other. Unless this were so, it would be difficult to account for the consent with which both decrees were passed, for the silence of the decree on the bill of the 3rd of October, on the subject of the rents and profits, and for the reservation of the parties, equities, on *such exceptions as might be taken to the accounts*, when stated in pursuance of the decree.　　CAUSE REMANDED TO CHANCERY.